IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| PACIFIC STOCK, INC., | ) | CIVIL NO. 11-00423 SOM/BMK |
| | ) | |
| Plaintiff, | ) | ORDER DENYING PACIFIC STOCK'S |
| | ) | MOTION FOR PARTIAL SUMMARY |
| vs. | ) | JUDGMENT; ORDER DENYING |
| | ) | PEARSON EDUCATION'S MOTION |
| PEARSON EDUCATION, INC., | ) | FOR SUMMARY JUDGMENT |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER DENYING PACIFIC STOCK'S MOTION
FOR PARTIAL SUMMARY JUDGMENT; ORDER DENYING
PEARSON EDUCATION'S MOTION FOR SUMMARY JUDGMENT**

**I.       INTRODUCTION.**

Plaintiff Pacific Stock, Inc., alleges that Defendant Pearson Education, Inc., has infringed on Pacific Stock's photograph copyrights. Pacific Stock gave Pearson licenses to use those photographs in textbooks that Pearson said it planned to publish, but, according to Pacific Stock, Pearson exceeded the terms of the licenses. Pacific Stock asserts claims for copyright infringement, fraud, and fraudulent concealment.

Both Pacific Stock and Pearson have moved for summary judgment, Pacific Stock on a portion of the case, and Pearson on the entire case. The motions rely largely on evidence in the form of dense charts containing line items representing orders, print runs, and similar information. That is, this is not a record filled with new-smelling books to thumb through or glorious color photographs to peruse. The record is far less exciting for any lover of either books or photographs. At most,

postage-size versions of the photographs appear on some documents.  Although Pacific Stock shows a likelihood that Pearson has infringed on copyrights, questions of fact about Pearson's actual use of the stock photographs preclude a grant of summary judgment to Pacific Stock.  Summary judgment is similarly denied as to Pearson's motion for summary judgment.[1]

**II.      BACKGROUND.**

The facts of this case are largely undisputed.  Pacific Stock represents approximately 70 photographers, whose photographs it licenses others to use.  The sole owner of Pacific Stock is Barbara Brundage.  See Pearson Education, Inc.'s Concise Statement of Facts ¶¶ 1-2, ECF No. 76; Pacific Stock's Concise Statement of Facts in Opposition ¶ 1, ECF No. 94.

Pearson publishes school textbooks and other educational materials in which it sometimes includes Pacific Stock's "stock photos."  The licensing process commences when Pearson sends a "billing request" to Pacific Stock.  See Pearson's CSOF ¶¶ 3-4, ECF No. 76; Pacific Stock's CSOF ¶ 1, ECF No. 94.  Copies of the billing requests are filed as Exhibit D, ECF No. 79.  All of these requests contain similar information.

---

[1]As used in this order, image numbers refer to the images included in Exhibit A to the Complaint of June 30, 2011.  At the hearing on these motions, Pacific Stock withdrew its claims pertaining to 20 images (numbers, 1, 2, 4 to 7, 11, 20, 21, 24, 31, 34, 66, 75, 84, and 86-90).  See Transcript of February 19, 2013, ECF No. 117.

For example, with respect to image 13, a picture of the Great Wall of China, Pearson informed Pacific Stock on or about January 21, 2000, that Pearson wished to use a 1/4-page image in a textbook, that the circulation of the textbook would be "Up to 40,000," and that the distribution region for the textbook would be "North America."  <u>See</u> ECF No. 79, PageID # 1141.

Pacific Stock's practice is to respond to billing requests by sending invoices.  Each invoice sent to Pearson stated the scope of the license to use the photograph in issue, as well as the price Pacific Stock was charging.  For example, with respect to image 13, Pacific Stock sent Pearson an invoice dated February 1, 2000.  The invoice stated that, for a certain price, Pearson would have a "One time non-exclusive use" of a 1/4-page photograph of the Great Wall of China for a textbook with a "Print-run: Up to 40,000" and "Distribution Area: North America."  <u>See</u> ECF No. 80, PageID # 1234.  The invoice stated: "Rights: NO electronic use (web site, CDROM, or other media use.)"  The invoice also provided, "Use of any image is conditioned on the receipt of payment in full.  In the event of unauthorized use, it is agreed that a retroactive license can be made available at a fee of ten (10) times the normal reproduction charge."  <u>Id.</u>

Effective September 18, 2003, Pacific Stock agreed to pricing terms for Pearson's use of Pacific Stock's stock

photographs.  See Ex. 9, ECF No. 84-3.  Pearson calls this agreement a "preferred vendor agreement," and says that the agreement was attractive to Pacific Stock because it encouraged Pearson's use of Pacific Stock's stock photographs by setting a price and eliminating the need to negotiate for each individual photograph.  See Pearson's CSOF ¶¶ 6-8, ECF No. 76; Pacific Stock's CSOF ¶ 1, ECF No. 94.  The September 2003 agreement set a "base rate" for up to a 1/2-page photograph, with distribution of up to 40,000 copies in North America.  For a 3/4-page or full-page, the "base rate" increased.  If distribution was over 40,000, a percentage was to be added to the "base rate."  If distribution was to exceed 100,000, a higher percentage was to be added to the base rate.  See Ex. 9, ECF No. 84-3.  The invoices for images 1 to 10 and 12 to 19 preceded the effective date of the pricing agreement.[2]  See Ex. E, ECF No. 80.

Effective March 9, 2004, Pacific Stock and Pearson agreed to more detailed pricing terms.  See Ex. 10, ECF No. 84-4.

---

[2]Although the parties have filed many of the documents in this case under seal, they originally did so without obtaining court approval.  Only after the court sought the parties' compliance with Local Rule 83.12 was a motion to seal the documents filed.  Although the documents contain sensitive business information, the court feels the need to provide some minimal level of detail to take this matter out of the theoretical realm and into a practical, understandable one.  With the sealed status of certain exhibits in mind, the court refrains from stating dollar amounts and percentage numbers.  The court notes that, at trial, exhibits will likely be publicly available.

4

The terms set forth in this agreement are generally the same as
in the previous one.  In relevant part, the March 2004 agreement
clarified the pricing for "Extended Print Runs."  If distribution
was over 40,000, the same percentage agreed to earlier was to be
added to the "base rate."  If distribution was to exceed 100,000,
the same percentage agreed to earlier was to be added to the base
rate.  Id.

        After the pricing agreements had been entered into,
Pearson continued to send "billing requests" to Pacific Stock for
use of stock photographs, and Pacific Stock continued to send
Pearson invoices containing licenses for the use of the
photographs.  For example, on or about January 12, 2006, Pearson
sent a "billing request" for a picture of a beach, image 22,
saying that it wished to use a 1/4-page picture in a textbook
with a circulation of up to 40,000, with distribution mostly in
the United States, but not more than 10% abroad.  Pearson
indicated that it was willing to pay an additional percentage
over the "base rate" for this use.  See Ex. D, ECF No. 79, PageID
# 1147.  Pacific Stock sent Pearson an invoice with a price for
use of the beach photograph.  The price was generally consistent
with the prices set forth in the pricing agreement.  Pacific
Stock granted Pearson a one-time, nonexclusive use of image 22
that allowed Pearson to use a 1/4-page picture in a textbook with
a run of up to 40,000 and distribution mostly in the United

States, with up to 10% abroad.  <u>See</u> Ex. E, ECF No. 80, PageID # 1250.

At the hearing on the motions, Pearson indicated that, except with respect to image numbers 134 and 135, it had not asked Pacific Stock for extensions or expansions of the various image licenses.

Barbara Brundage testified in October 2012 that she had become suspicious that publishers might have been exceeding the terms of the licenses Pacific Stock was granting "Over the past couple of years."  <u>See</u> Deposition of Barbara Brundage at 49, Oct. 25, 2012, ECF No. 98-2.  Brundage apparently became suspicious of how Pearson was using the photographs in the Spring of 2011.  <u>Id.</u> at 51.

On June 31, 2011, Pacific Stock filed the present Complaint against Pearson.  <u>See</u> ECF No. 1.  The Complaint asserts that Pearson committed copyright infringement by violating licenses for 151 stock photographs.  It also asserts claims of fraud and fraudulent concealment.  <u>Id.</u>  Pacific Stock has withdrawn its claims with respect to 20 photographs, leaving licenses for 131 still in dispute.

Pacific Stock's motion for partial summary judgment addresses 59 of the 131 images.  <u>See</u> Pacific Stock's Motion for Summary Judgment, ECF No. 70 (seeking summary judgment with respect to image numbers 3, 8, 9, 10, 12, 13, 14, 15, 16, 18, 19,

22, 28, 29, 30, 33, 35, 36, 37, 63, 64, 67, 68, 69, 70, 71, 74, 76, 78, 80, 85, 91, 92, 98, 103, 104, 105, 107, 108, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 134, 135, 136, and 146).

A report from "Global Rights Data Warehouse" indicates that Pearson may have exceeded the licenses granted to it with respect to each of the 59 photographs.  This report was created by Pearson, apparently for this litigation, and turned over to Pacific Stock.  See Decl. of Paul Maki ¶ 3(f), ECF No. 71-2, PageID #440.  For example, with respect to image 13, which was licensed for use in up to 40,000 copies of a textbook, the report notes that the image may have been used in more than 140,000 copies.  See Ex. F, ECF No. 81, PageID # 1421.  Similarly, the license for image 22 was for 40,000, but may have been used in more than 45,000 volumes.  Id., PageID # 1424.  Pacific Stock has summarized the data in Exhibit F and reprinted the pertinent data in Exhibit A, which is more easily readable than Exhibit F.  See ECF No. 78.

Pearson notes that the report tracks the number of textbook volumes, not the number of times an image was used.  The report therefore does not speak to whether any of the images was actually used in a textbook.

At the hearing on the motion, Pearson asserted that the images may not have been included in the textbooks as a result of

last-minute editorial decisions.  Pearson also noted that, when Pacific Stock began questioning Pearson's use of the images, Pearson began removing the photographs from the textbooks.  While Pearson conceded at the hearing that it was likely that a high percentage of the textbooks did contain the images, it turns out that no one, not even Pacific Stock, has actually reviewed the textbooks to determine whether the images are actually included in them.  Pearson admitted at the hearing that, if the textbooks contained the images, Pearson had exceeded the numerical limits of various licenses.

Pacific Stock complains that Pearson should not be allowed to argue at this time that the images may not have been used in the textbooks.  Pacific Stock says that, in response to an interrogatory concerning "Product Use," Pearson referred Pacific Stock to various documents, including Exhibit F.  See ECF Nos. 103-4, Interrogatory No. 3.  "Product Use" as that term was used in the Interrogatories was defined by Pacific Stock as meaning "all uses of any of the Images as a part of or related or ancillary to that listed in the 'Title' column on Exhibit A." ECF No. 103-3.  Pearson is apparently taking the position that determining the number of times an image was used in a textbook cannot be discerned from Exhibit F alone.  For its part, Pacific Stock is complaining that Pearson gave it no reason to think that Exhibit F's references to textbooks named in billing requests or

invoices might actually be irrelevant to the interrogatory
response because those textbooks might not include images
licensed by Pacific Stock.

On the issue of who owns the copyrights to the images,
Pacific Stock claims to have a Certificate of Registration from
the Register of Copyrights for each of the 59 images at issue in
its motion for partial summary judgment.  See Ex. C, ECF Nos. 72-
73.  Pearson challenges the registration of 18 of the 59 images
(numbers 8, 22, 28, 29, 30, 35, 36, 78, 85, 92, 103, 105, 115,
125, 134, 135, 136, and 146).  See Opposition at 27 n.6, ECF No.
99.  Pearson is not contesting Pacific Stock's proper
registration of the other 41 images (numbers 3, 9, 10, 12, 13,
14, 15, 16, 18, 19, 33, 37, 63, 64, 67, 68, 69, 70, 71, 74, 76,
80, 91, 98, 104, 107, 108, 112, 113, 114, 116, 117, 118, 119,
120, 121, 122, 123, 124, 126, and 127).

Pearson notes the 18 disputed images were part of six
registration certificates corresponding to compilations of the
work of multiple photographers.  Pearson contends that a
registration of a collective work does not have the effect of
registering each of the individual works included in the
collective work.  Pacific Stock protests that it registered the
18 images in the manner it did pursuant to 37 C.F.R.
§ 202.3(b)(5) and guidance from the Copyright Office.  See Decl.
of Barbara Brundage ¶¶ 7, 8, and 11, ECF No. 27-1.

The ownership Pacific Stock asserts in the various copyrighted images was obtained through assignments.  See Decl. of Barbara Brundage ¶ 8, ECF No. 71-1 ("Pacific Stock has been assigned, and is the owner of, the copyrights in all of the images at issue in this case.").  In her deposition, Brundage explained that Pacific Stock and the photographers entered into "Contributor Agreements."  According to Brundage, from 1992 to 2003, photographers gave Pacific Stock the exclusive right to license their images in Hawaii, but retained the right to license their images outside of Hawaii.  See Brundage Test. at 191-95, ECF No. 98-2.  Beginning in 2003, the "Contributor Agreements" provided Pacific Stock with a worldwide exclusive right to license the photographers' images.  Id. at 197-98.  Each photographer still retained the right to use the images in the photographer's personal marketing materials and to personally license the image as well.  Id. at 199.

Pacific Stock says it also obtained through assignments the right to pursue copyright violations on behalf of the various photographers.  See, e.g., ECF Nos. 76-16 and 76-17.  An assignment dated June 14, 2011, from Doug Perrine states that Perrine

> hereby assigns to Agency [Pacific Stock] co-
> ownership of all copyrights in the image.
> This assignment authorizes Agency, in its
> sole discretion, to present, litigate and
> settle any accrued or later accruing claims,
> causes of action, choses in action--which is

> the personal right to bring a case--or
> lawsuits, brought by Agency to address
> unauthorized uses of the image by licensees
> of Agency, as if Agency were the undersigned.

ECF No. 76-16.  An assignment dated June 17, 2011, from Jody Watt

almost identically provides that Watt

> hereby assigns to Agency [Pacific Stock]
> ownership of all copyrights in the image.
> This assignment authorizes Agency, in its
> sole discretion, to present, litigate and
> settle any accrued or later accruing claims,
> causes of action, choses in action--which is
> the personal right to bring a case--or
> lawsuits, brought by Agency to address
> unauthorized uses of the image by licensees
> of Agency, as if Agency were the undersigned.

ECF No. 76-17.  The only difference between the assignments is

that Perrine assigns "co-ownership," while Watt assigns

"ownership."

Pearson seeks summary judgment on certain grounds with

respect to all 131 of the images in issue.  It also says that,

with respect to 75 images (numbers 1, 4 to 6, 11, 20, 21, 23 to

27, 31, 32, 34, 37 to 39, 50 to 62, 65 to 66, 72 to 73, 77, 79,

83, 84, 86 to 90, 93 to 97, 99 to 102, 106, 109 to 111, 129 to

133, 136, 139 to 145, and 147 to 151), Pacific Stock has no

evidence at all that Pearson exceeded the scope of the licenses.

This list includes 2 images that Pacific Stock has also moved for

summary judgment on, image numbers 37 and 136.  It also includes

17 images concerning which Pacific Stock has withdrawn its claims

(numbers 1, 4 to 6, 11, 20, 21, 24, 31, 34, 66, 84, and 86 to

90).  Thus, Pearson's argument that Pacific Stock lacks evidence that the licenses were exceeded ends up concerning 58 images, not 75.

### III.      STANDARD.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (2010).  See Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  The movants must support their position that a material fact is or is not genuinely disputed by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c).  One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential

element at trial.  See id. at 323.  A moving party without the
ultimate burden of persuasion at trial--usually, but not always,
the defendant--has both the initial burden of production and the
ultimate burden of persuasion on a motion for summary judgment.
Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102
(9th Cir. 2000).  The burden initially falls on the moving party
to identify for the court "those portions of the materials on
file that it believes demonstrate the absence of any genuine
issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec.
Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing
Celotex Corp., 477 U.S. at 323); accord Miller, 454 F.3d at 987.
"A fact is material if it could affect the outcome of the suit
under the governing substantive law."  Miller, 454 F.3d at 987.

       When the moving party fails to carry its initial burden
of production, "the nonmoving party has no obligation to produce
anything."  In such a case, the nonmoving party may defeat the
motion for summary judgment without producing anything.  Nissan
Fire, 210 F.3d at 1102-03.  On the other hand, when the moving
party meets its initial burden on a summary judgment motion, the
"burden then shifts to the nonmoving party to establish, beyond
the pleadings, that there is a genuine issue for trial."  Miller,
454 F.3d at 987.  This means that the nonmoving party "must do
more than simply show that there is some metaphysical doubt as to
the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 586 (1986) (footnote omitted).  The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial." Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." California v. Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000) ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." Miller, 454 F.3d at 988 (quotations and brackets omitted).

IV.        **PACIFIC STOCK'S MOTION FOR PARTIAL SUMMARY JUDGMENT.**

Pacific Stock moves for summary judgment on its copyright infringement claim with respect to 59 images.  Pacific Stock alleges that Pearson used 59 of its copyrighted photographs in a manner exceeding the terms of the licenses granted by Pacific Stock.  As the Ninth Circuit has noted, "A licensee infringes the owner's copyright if its use exceeds the scope of

its license." <u>S.O.S., Inc. v. Payday, Inc.</u>, 886 F.2d 1081, 1087 (9th Cir. 1989).

Questions of fact preclude the grant of partial summary judgment to Pacific Stock with respect to the copyright infringement claim concerning those 59 images.

### A. Pacific Stock Fails to Establish That the Images Were Actually Included in Textbooks In a Manner Exceeding the Scope of the Licenses.

As demonstrated by a report Pearson itself prepared, Pearson may have exceeded the licenses it had for the 59 images. <u>See</u> Ex. F, ECF No. 81. Each license contains limits. Most say that Pearson is granted the right to use an image in up to 40,000 copies of a textbook distributed in North America. <u>See</u> Ex. E, ECF No. 80. Pearson's report, Exhibit F, indicates that the number of copies printed exceeded the numerical limit in the license. The problem is that it remains unclear whether any of the 59 images was actually included in any of Pearson's textbooks. If they were included, Pearson likely exceeded the scope of its various licenses by exceeding the limits in the licenses, but this court cannot say that there is no issue of fact as to whether the images indeed appeared in the textbooks.

The court is not without sympathy for Pacific Stock in feeling ambushed in this regard, but Pearson clearly stated in its response to Pacific Stock's interrogatory about "Product Use" that it was referring Pacific Stock to numerous materials,

15

including but certainly not limited to Exhibit F.  Pacific Stock does not say that Exhibit F and the other materials in combination would fail to respond to the interrogatory.  Instead, Pacific Stock chooses to place all its reliance on Exhibit F. Exhibit F is simply an insufficient basis for summary judgment as to the 59 images in issue.

If Pacific Stock does establish use exceeding the limits in a license, that use would be evidence of copyright infringement.  The limits in the license define the scope of the license; they are not simply covenants enforceable only through a breach of contract action.

Pearson's reliance on <u>Netbula, LLC, v. Storage Tech. Corp.</u>, 2008 WL 228036 (N.D. Cal. Jan. 18, 2008), for the proposition that use exceeding the limit of a license is a contractual issue is misplaced.  That very case noted that, "when a license is limited in scope and the licensee acts outside the scope, the licensor can bring an action for copyright infringement."  <u>Id.</u> at *2 (quotation marks omitted).  A contractual right, by contrast, is enforceable only through a breach of contract action, which usually provides a lesser remedy than a copyright infringement action.  <u>See id.</u>  <u>Accord</u> <u>Sun Microsystems, Inc. v. Microsoft Corp.</u>, 2000 WL 33223397, *3 (N.D. Cal. May 8, 2000) ("a licensee's breach of a covenant independent of the license grant does not support a claim for copyright

16

infringement").  In <u>Netbula</u>, the license at issue contained a limit on the number of software users.  Noting that the license did not limit <u>how</u> the software was to be used, the court determined that the numerical limit on users involved a contractual promise.  <u>See</u> 2008 WL 228036 at *5.

Numerous other decisions provide a closer analogy to the present case.  <u>LGS Architects, Inc. v. Concordia Homes of Nevada</u>, 434 F.3d 1150, 1157-58 (9th Cir. 2006), involved a license issued by an architect to allow use of designs in a certain subdivision.  The developer attempted to use the designs in a different subdivision.  The Ninth Circuit viewed the developer's use as exceeding the scope of the license.  <u>Id.</u>

In the same vein, the district court in <u>Grant Heilman Photography, Inc. v. John Wiley & Sons, Inc.</u>, 864 F. Supp. 2d 316 (E.D. Pa. 2012), faced with a preliminary injunction motion, ruled that a stock photography company was likely to succeed on the merits of its claim for copyright infringement.  The license in <u>Heilman</u> limited a textbook publisher to using photographs in 20,000 textbooks, and the publisher exceeded that numerical limit.

The analyses in <u>LGS Architects</u> and <u>Grant Heilman Photography</u> are akin to the approach taken in <u>MDY Industries, LLC v. Blizzard Entertainment, Inc.</u>, 629 F.3d 928 (9th Cir. 2010), as amended on denial of rehearing.  In <u>MDY</u>, the Ninth Circuit

17

examined the difference between exceeding the scope of a license, which results in a cause of action for copyright infringement, and the breach of a covenant, which results in a breach of contract action.  The Ninth Circuit stated, "To recover for copyright infringement based on breach of a license agreement, (1) the copying must exceed the scope of the defendant's license and (2) the copyright owner's complaint must be grounded in an exclusive right of copyright (e.g., unlawful reproduction or distribution."  Id. at 940.

In MDY, the Ninth Circuit provided an example clearly applicable to the present case:

> "[C]onsider a license in which the copyright owner grants a person the right to make one and only one copy of a book with the caveat that the licensee may not read the last ten pages.  Obviously, a licensee who made a hundred copies of the book would be liable for copyright infringement because the copying would violate the Copyright Act's prohibition on reproduction and would exceed the scope of the license.  Alternatively, if the licensee made a single copy of the book, but read the last ten pages, the only cause of action would be for breach of contract, because reading a book does not violate any right protected by copyright law."

Id. (quoting Storage Tech. Corp. v. Custom Hardware Eng'q & Consulting, Inc., 421 F.3d 1307, 1316 (Fed. Cir. 2005)).  This case involves claims that Pearson exceeded the scope of its various licenses with respect to the number of textbooks in which an image could appear.  Those claims mirror the example in MDY of

18

the person who made a hundred copies of a book while licensed to make only a single copy.  That person "would be liable for copyright infringement," having exceeded the scope of the license.  Id.  Because Pacific Stock's claim goes to exceeding the scope of an exclusive right of copyright granted in the various licenses, as opposed to a covenant contained in those licenses, Pacific Stock has a copyright infringement claim against Pearson for exceeding the numerical limits of the various licenses.  If Pearson wanted to exceed those numerical limits, it needed to obtain a license to do so.  As admitted by Pearson at the hearing on the present motions, with respect to most of the images, Pearson made no attempt to obtain further licenses to use the images.

To the extent Pearson relies on the district court's ruling in Sun Microsystems as requiring a breach of contract action when a numerical limit in a license is exceeded, this court notes that Sun Microsystems was decided before the Ninth Circuit issued its MDY decision.

### B.    The Denial of Pacific Stock's Motion is Not Based on Pearson's Other Arguments.

The denial of Pacific Stock's motion for partial summary judgment rests solely on the factual issue identified above.  That issue makes it unnecessary for this court to address the other arguments advanced by Pearson in opposition to Pacific Stock's motion.

However, because it may assist the parties in presenting future motions, this court explains here why it deems Pearson's other arguments unpersuasive.

>    1.    **Pearson Does Not Establish That Questions of Fact as to Pacific Stock's Copyright Registrations Preclude Summary Judgment.**

Pearson argues that Pacific Stock fails to show that it has rights in 18 of the 59 images that are the subject of Pacific Stock's motion.  A registered copyright is generally a precondition to a copyright infringement claim.  <u>See</u> 17 U.S.C. § 411.  To obtain the protection of federal copyright laws, the holder of a valid copyright may register the copyright with the United States Copyright Office.  <u>See</u> 17 U.S.C. § 408.  In applying for copyright registration, an applicant who is not the author of the work that is the subject of the application must provide "a brief statement of how the claimant obtained ownership of the copyright."  <u>Id.</u>  A registration creates a rebuttable presumption of validity:

>    In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.  The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.

17 U.S.C. § 410(c).  "A certificate of copyright registration, therefore, 'shifts to the defendant the burden to prove the

invalidity of the plaintiff's copyrights.'"   Entm't Research Grp. v. Genesis Creative Grp., 122 F.3d 1211, 1217 (9th Cir. 1997) (quoting Masquerade Novelty, Inc. v. Unique Indus., Inc., 912 F.2d 663, 668 (3d Cir. 1990)).  "An accused infringer can rebut this presumption of validity, however.  To rebut the presumption, an infringement defendant must simply offer some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement."  Id. at 1217-18 (internal citations omitted).

Pacific Stock claims ownership of the 59 images through assignments.  See Decl. of Barbara Brundage ¶ 8, ECF No. 71-1 ("Pacific Stock has been assigned, and is the owner of, the copyrights in all of the images at issue in this case.").  In her deposition, Brundage explained that Pacific Stock and the photographers entered into "Contributor Agreements."  She testified that, from 1992 to 2003, photographers provided Pacific Stock with an exclusive right to license their images in Hawaii. See Brundage Test. at 191-95, ECF No. 98-2.  Beginning in 2003, the "Contributor Agreements" provided Pacific Stock with a worldwide exclusive right to license the photographers' images. Id. at 197-98.

Except with respect to the images created by Doug Perrine and Jody Watt, Pearson does not challenge Pacific Stock's ownership of the copyrights.  With respect to Perrine and Watt, Pearson says that the 2011 agreements were insufficient to

21

transfer exclusive ownership of the copyrights to Pacific Stock. See, e.g., ECF Nos. 76-16 and 76-17.  The problem with this argument, however, is that Pearson does not meet its burden of establishing that the earlier Contributor Agreements had not transferred such ownership.

Images by Perrine and Watt appear to be among 18 of the 59 images whose copyright registrations Pearson is challenging (numbers 8, 22, 28, 29, 30, 35, 36, 78, 85, 92, 103, 105, 115, 125, 134, 135, 136, and 146).  Pearson is not contesting that Pacific Stock properly registered the other 41 images (numbers 3, 9, 10, 12, 13, 14, 15, 16, 18, 19, 33, 37, 63, 64, 67, 68, 69, 70, 71, 74, 76, 80, 91, 98, 104, 107, 108, 112, 113, 114, 116, 117, 118, 119, 120, 121, 122, 123, 124, 126, and 127).  See Opposition at 27 n.6, ECF No. 99.

Pearson claims that Pacific Stock improperly used compilations in registering the 18 images.  Pacific Stock, on the other hand, says it registered the photos in the manner it did because it was following directions from the Copyright Office. On the present record, the court sees no reason to fault Pacific Stock for having registered the photos in accordance with the guidance given by the Copyright Office.  Given the state of the present record, the court is not persuaded by Pearson's citation of cases indicating that certain compilation registrations were

insufficient to register the individual components of a compilation.

Pearson complains that the registrations for the 18 images do not identify the authors of each work.  Pearson is unsuccessful in establishing this point.  The registrations for the various images are attached as Exhibit C, ECF No. 72-1. Exhibit C, which is about 2 inches thick, is an example of the kind of exhibit this court has struggled to decipher.  The parties do not tell this court where in a voluminous exhibit the court should look, assuming the court will make its way through numerous and lengthy exhibits.  This approach violates Local Rule 56.1 (c) ("The concise statement shall particularly identify the page and portion of the page of the document referenced.  The document referred to shall have relevant portions highlighted or otherwise emphasized.").  Pursuant to Local Rule 56.1(f), "the court shall have no independent duty to review exhibits in their entirety, but rather will review only those portions of the exhibits specifically identified in the concise statements." Notwithstanding the considerable burden the parties have placed on the court, the court has done its best to parse Exhibit C.

For purposes of the present discussion, the court uses as an example image 95, which appears to be representative of the registrations for the various compilations.  Image 95 appears to have been registered as part of the documents submitted as ECF

No. 72-1, PageID #s 448 to 467.  Although Pearson argues that the compilation registrations did not identify the "authors" of the pictures, the photographers appear to have been identified in the Continuation Sheets for Application Forms.  Unfortunately, the text of the exhibit is very small and somewhat blurry, making a definitive determination difficult.  Assuming the photographer, or author, is identified, this case is distinguishable from the cases cited by Pearson on this point.

In summary, Pearson is unpersuasive in urging the court to deny any part of Pacific Stock's partial summary judgment motion on the basis of defects in the copyright registrations.

> **2.  Pearson Does Not Show That Questions of Fact Relating to the Preferred Vendor Agreements Preclude Summary Judgment as to Pacific Stock's Copyright Infringement Claims.**

The court is similarly unpersuaded by Pearson's argument that questions of fact relating to the preferred vendor agreements preclude summary judgment on the copyright infringement claims by Pacific Stock.  Although the agreements set forth agreed-upon prices for Pearson's use of Pacific Stock's photographs, they give Pearson no right to any use greater than Pearson paid for.  Pearson may well have been entitled under the preferred vendor agreements to enhance the licenses by, for example, increasing the number of times it could reproduce an image.  However, any such enhancement had to be requested and paid for.  Nothing in the agreements allowed Pearson to

unilaterally enhance its usage without notification to Pacific
Stock and without payment; certainly nothing in the agreements
rendered inapplicable copyright infringement laws requiring
compliance with the scope of a limited license when a licensee
has not even sought a license enhancement.

> **3.    Pearson Does Not Show That an "Implied
>         License" Precludes Summary Judgment on
>         Pacific Stock's Copyright Infringement
>         Claims.**

Pearson argues that it had an "implied license"
allowing it to use Pacific Stock's images in the manner it did.
Although there is no evidence that Pacific Stock ever refused a
request by Pearson to use a stock photograph in a textbook, that
does not mean that Pacific Stock was barred from refusing a
request.  Nor does that mean that Pearson was free to use the
images in any way it wanted, without even requesting permission.

In Field v. Google, Inc., 412 F. Supp. 2d 1106, 1116
(D. Nev. 2006), the district court noted that a license can be
implied when a copyright holder engages in conduct giving rise to
an inference that the owner consents to the use.  This court has
not been presented with evidence of any conduct or course of
dealing suggesting that Pearson was free to do as it pleased.  To
the contrary, each invoice issued by Pacific Stock stated, "Use
of any image is conditioned on receipt of payment in full."

25

> **4.    Pearson Does Not Show that Pacific Stock's Copyright Infringement Claims are Time-Barred.**

Finally, Pearson asks the court to deny Pacific Stock's motion on the ground that the copyright infringement claims are untimely.  Although raised in its opposition to Pacific Stock's motion, Pearson is in essence relying on an affirmative defense with respect to which it has the burden of proof.  See Cal. Sansome Co. v. U.S. Gypsum, 55 F.3d 1402, 1406 (9th Cir. 1995)("A defendant raising the statute of limitations as an affirmative defense has the burden of proving the action is time barred.").

The Copyright Act provides, "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."  17 U.S.C. § 507(b).  "A cause of action for copyright infringement accrues when one has knowledge of a violation or is chargeable with such knowledge."  Roley v. New World Pictures, Ltd., 19 F.3d 479, 481 (9th Cir. 1994).  Accordingly, the Ninth Circuit has noted that "the statute of limitations does not prohibit recovery of damages incurred more than three years prior to the filing of suit if the copyright plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances."  Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700, 706 (9th Cir. 2004).

Pearson presents no evidence indicating that Pacific Stock either knew or should have known of the alleged copyright violations more than three years before the filing of this action.  Brundage, the sole owner of Pacific Stock, testified in October 2012 that she became suspicious that publishers might have been exceeding the terms of Pacific Stock's licenses "Over the past couple of years."  See Deposition of Barbara Brundage at 49, Oct. 25, 2012, ECF No. 98-2.  Brundage's suspicions as to Pearson's use of the photographs apparently arose beginning in the Spring of 2011.  Id. at 51.  The Complaint in this case was filed on June 30, 2011.  Pearson fails to establish that Pacific Stock's action is untimely.

V.      **PEARSON'S MOTION FOR SUMMARY JUDGMENT.**

   A.    **Pearson is Not Entitled to Summary Judgment on Pacific Stock's Claims Relating to 58 Images for Which Pearson Claims Pacific Stock Presents No Evidence.**

Pearson argues that, with respect to 58 images (image numbers 23, 25 to 27, 32, 37 to 39, 50 to 62, 65, 72 to 73, 77, 79, 83, 93 to 97, 99 to 102, 106, 109 to 111, 129 to 133, 136, 139 to 145, and 147 to 151), Pacific Stock lacks evidence to support any claim that the licenses were exceeded, and that summary judgment should therefore be granted to Pearson as to those images.  In fact, the record includes evidence creating questions of fact that preclude summary judgment with respect to the 58 images.

First, with respect to image numbers 37 and 136, the court looks to Exhibit F, ECF No. 81. Exhibit F, a document prepared by Pearson itself, suggests that Pearson may have exceeded the numerical limits in the licenses for those images. While, as noted earlier in this order, the import of Exhibit F is in dispute, it suffices to avoid summary judgment in Pearson's favor with respect to image numbers 37 and 136. That leaves 56 images in issue as to Pearson's "lack of evidence" argument.

Pacific Stock responded to Pearson's motion by withdrawing its claims as to certain images, but its memorandum opposing Pearson's motion said nothing about these specific 56 images. However, because the court is considering both Pacific Stock's partial summary judgment motion and Pearson's summary judgment motion simultaneously, and because Pacific Stock's opposition to Pearson's motion conspicuously refers to Pacific Stock's own motion, the court reaches out and examines Exhibit B, ECF No. 78, submitted in support of Pacific Stock's partial summary judgment motion. As counsel for Pacific Stock explains in his declaration, Exhibit B is a summary of information culled from Pearson's own documents, specifically Exhibit H, ECF No. 74-5, a CD containing information about the media in which Pearson published Pacific Stock's images, and about the geographical distribution of Pearson's publications. Declaration of Paul Maki ¶¶ 3(b), (h), (i), ECF No. 71-2.

28

According to Exhibit B, all of the 56 images were used by Pearson in either forms of media (e.g., electronic) or geographical locations beyond the provisions of the licenses. This evidence precludes summary judgment on the basis of "lack of evidence."

**B.   Pearson's Other Arguments Relating to Copyright Infringement Are Unsuccessful.**

In its summary judgment motion, Pearson advances other arguments applicable to the copyright infringement claims for all 131 images covered by Pacific Stock's Complaint.   These arguments mirror the arguments Pearson raised in opposition to Pacific Stock's partial summary judgment motion.   Thus, for example, Pearson argues that copyright infringement laws are inapplicable because its actions involve only breaches of covenants, that the preferred vendor agreements preclude copyright infringement claims, and that the Watt and Perrine photographs were not properly registered.   These arguments fail to carry the day with respect to Pearson's own motion even more decidedly than they failed when Pearson sought to achieve the less burdensome task of defeating Pacific Stock's motion.

**C.   Pearson is Not Entitled to Summary Judgment on Pacific Stock's Fraud and Fraudulent Concealment Claims.**

Pearson also seeks summary judgment with respect to Pacific Stock's fraud and fraudulent concealment claims,

arguing that the record does not contain evidence of fraud or fraudulent concealment.  This court disagrees.

To prevail on a fraud claim, a plaintiff must demonstrate (1) that false representations were made by the defendant, (2) with knowledge of their falsity (or without knowledge of their truth or falsity), (3) in contemplation of plaintiff's reliance upon them, and (4) that the plaintiff detrimentally relied on them.  Hawaii's Thousand Friends v. Anderson, 70 Haw. 276, 286, 768 P.2d 1293, 1301 (1989).

Fraudulent concealment is just a form of fraud.  See Tachibana v. Colo. Mountain Dev., Inc., No. 07-CV-00364, 2011 WL 1327113, *3 n.7 (D. Haw. Apr. 5, 2011) ("We interpret the reference to 'fraudulent concealment' as simply a means of clarifying for Defendants that the type of fraud alleged includes fraud by omission and concealment, and not just affirmative conduct."); Sung v. Hamilton, 710 F. Supp. 2d 1036, 1047 (D. Haw. 2010) (treating a fraudulent concealment claim as fraud based on alleged failures to disclose information); Associated Eng'rs & Contractors, Inc. v. State, 58 Haw. 187, 219-20, 567 P.2d 397, 418 (1977) ("Fraud in its generic sense, especially as the word is used in courts of equity, comprises all acts, omissions and concealments involving a breach of legal or equitable duty and resulting in damage to another.").  A claim for fraudulent

concealment is therefore evaluated under the four fraud elements
discussed above.  <u>Sung</u>, 710 F. Supp. 2d at 1047.

Pearson argues that Pacific Stock lacks any evidence on
which a fraud claim may be based.  However, Pacific Stock has
submitted evidence demonstrating a possible fraud claim.  For
example, with respect to image 14, Pearson sent Pacific Stock a
billing request on July 30, 2002, asking to use the image in "Up
to 40,000" copies of a textbook.  <u>See</u> ECF No. 79, PageID # 1142.
Despite that numerical limitation in its own billing request,
Pearson appears to have made a forecast in October of 2001 that
it would print more than 55,000 copies of the textbook.  <u>See</u> ECF
No. 100-2, PageID # 2054.  Possibly, Pearson made adjustments to
its projections between October 2001 and July 2002, but the
evidence is sufficient for the purposes of this motion to suggest
that Pearson asked for a license to use an image in "Up to
40,000" volumes while planning to use the image in a greater
number of volumes.

The extent of the fraud that Pacific Stock will be able
to prove at trial is unclear, but the court concludes that there
are, at the very least, triable factual issues as to fraud.

**VI.    CONCLUSION.**

The court denies Pacific Stock' motion for partial
summary judgment.  The court also denies Pearson's motion for
summary judgment.  Given the dismissal of copyright infringement

31

claims arising out of 20 images (1, 2, 4 to 7, 11, 20, 21, 24, 31, 34, 66, 75, 84, and 86-90), 131 images remain in issue with respect to Pacific Stock's copyright infringement claims.

The parties should immediately contact the Magistrate Judge assigned to this case to hold a settlement conference.  At the discretion of the Magistrate Judge, the parties may be required to have representatives with settlement authority attend the settlement conference.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 26, 2013.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Pacific Stock, Inc. v. Pearson Education, Inc., Civ. No. 11-00423 SOM/BMK; ORDER DENYING PACIFIC STOCK'S MOTION FOR PARTIAL SUMMARY JUDGMENT; ORDER DENYING PEARSON EDUCATION'S MOTION FOR SUMMARY JUDGMENT